UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil No. 10-202-P-S |
| | ) |
| ROBERT C. ANDREWS, | ) |
| | ) |
| Defendant | ) |

**RECOMMENDED DECISION**

The United States has filed suit against Robert Andrews seeking judgment in response to his default on student loan obligations. There is a pending motion for summary judgment and Andrews, an attorney whose student loans stem from his law school education, has opposed this request. I now recommend that the Court grant the United States' motion because Andrews's disputed facts do not create a genuine issue apropos the United States' right to judgment on his default of his consolidated student loan with the United States Department of Education.

**DISCUSSION**

**Summary Judgment Standard**

"Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant[s are] entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). I draw all reasonable inferences in favor of Andrews, but where he bears the burden of proof, he "'must present definite, competent evidence' from which a reasonable jury could find in [his] favor." United States v. Union Bank For Sav. & Inv. (Jordan), 487 F.3d 8, 17 (1st Cir. 2007) (quoting United States v. One Parcel of Real Prop., 960 F.2d 200, 204 (1st Cir. 1992)). Andrews cannot defeat summary judgment by relying on "improbable inferences, conclusory allegations, or rank

speculation." Ingram v. Brink's Inc., 414 F.3d 228-29 (1st Cir. 2005); accord Fontánez-Núñez v. Janssen Ortho LLC, 447 F.3d 50, 55 (1st Cir. 2006).

**Legal Standard for Collection on a Promissory Note**

To advance its claim against Andrews the United States must establish "'a prima facie case that it is entitled to collect on a promissory note when it introduces the promissory note and a certificate of indebtedness signed under penalty of perjury by a loan analyst.'" United States v. Emanuel, Civ. No. 09-185-SM, 2009 WL 4884482 *2, (D.N.H. Dec. 10, 2009) (quoting Guillermety v. Sec'y of Educ., 341 F.Supp.2d, 682, 688 (E.D.Mich. 2003)). "Once such a prima facie case is established," Andrews "has the burden of proving the nonexistence, extinguishment or variance in payment of the obligation." United States v. Petroff-Kline, 557 F.3d 285, 290 (6th Cir. 2009).

**Facts**

On February 4, 2004, Robert C. Andrews executed a promissory note to secure a consolidation loan under the William D. Ford Federal Direct Loan program under Title IV-D of the Higher Education Act of 1965. (SMF ¶ 1; Complaint ¶ 3; SAMF ¶ 17; Resp. SAMF ¶¶ 10,17; Andrews Aff. ¶ 17.) In 2008, Andrews defaulted upon the terms of the promissory note. As of April 19, 2010, Andrews was indebted to the Department of Education in the principal amount of $121,041.33, and interest in the amount of $10,224.38, for a total amount due of $131,265.71. Interest is accruing from April 19, 2010, at the rate of 4.38% per annum until the date of judgment. The Department of Education has credited a total of $2,832.52 in payments from all sources. (SMF ¶ 2; Compl. ¶ 4; Certificate of Indebtedness at 1, Doc. No. 1-2.) In response to Andrews's opposition, the United States presses that Andrews's,

> own exhibits confirm unequivocally that on February 4, 2004, he signed a loan consolidation (Defendant's Exhibit C; Docket # 13 at page 3) for $89,000 and

> $15, 283 (Defendant's Exhibit C at page 2), for a total principal debt obligation at the time of $104,283. The original amount borrowed upon graduation in May of 1998 is therefore immaterial. Moreover, as set forth in the attached Declaration of Alberto Francisco, loan consolidation enables borrowers like the Defendant to apply for a loan to consolidate outstanding educational loans made pursuant to Title IV of the Higher Education Act of 1965 …. The consolidated loan was disbursed on … March 8, 2004 in the amount of $58, 592.43 and $45, 244.73 at 4.38 interest annum. … Pursuant to 34 CFR § 685.202(b), a total of $17, 436.56 in unpaid interest was capitalized and added to the principal balance (Francisco Declaration paragraph 13).

(Resp. SAMF ¶¶ 10,11,12, 13, 14, 15, 16, 18, 20, 23, 25, 32, 34, 41 ; see also id. ¶¶ 26, 27, 28, 29, 35.) There is no dispute that demand has been made upon Andrews by the United States for the sum due, but the amount due remains unpaid. (SMF ¶3; Resp. SMF¶ 3.) Andrews is not asserting that he is in the military service of the United States or that he is an infant or a mentally incompetent person. (SMF ¶4; Resp. SMF ¶ 4.)

Andrews has set forth forty-six paragraphs of additional fact, not all of which are material to the legal standard this court must apply. However, I have included his factual representations so as to make sure that all concerned know that they have been considered.

Andrews funded his legal education with student loans from the Maine Education Loan Authority. (SAMF ¶ 1; Resp. SAMF ¶ 1.) He received student loans from three sources: Stafford Loans, Unsubsidized Stafford loans, and Perkins loans. (SAMF ¶ 2; Resp. SAMF ¶ 2.) Andrews relies on his personal records that he has kept apropos the documentation of his indebtedness. (SAMF ¶ 3; Resp. SAMF ¶ 3.)

In 1995 Andrews began attending the University of Maine School of Law as a fulltime law student. (SAMF ¶ 4; Resp. SAMF ¶ 4), and he studied there for the academic years 1995-1996, 1996-1997, and 1997-1998. (SAMF ¶ 5; Resp. SAMF ¶ 5.) He paid with student loans. (SAMF ¶ 6; Resp. SAMF ¶ 6.) Andrews did not fund any of his previous education with loans associated with the United States government. (SAMF ¶ 7; Resp. SAMF ¶ 7.) He has had no

3

other student loan debt other than what he borrowed to pay for his law education. (SAMF ¶ 8; Resp. SAMF ¶ 8); Andrews's prior education had been completely funded by his parents or other family members (SAMF ¶ 9; Resp. SAMF ¶ 9).

Andrews maintains that he borrowed a total of $59,119 for his law school education. (SAMF ¶ 10; Andrews Aff. 10; id. Exs. A & B.) He did not borrow any of this money directly from the United States or the Department of Education. (SAMF ¶ 11; Andrews Aff. ¶ 11.)[1] He insists he did not borrow any student loan money at the interest rates indicated by the aforementioned federal higher education act. (SAMF ¶ 12; Andrews Aff. ¶ 12; Resp. SAMF ¶ 1.) Andrews's Maine Education Loan Authority loan had an interest rate that was one-percent lower than the interest rate that was indicated for unsubsidized student loans for the life of the loan. (SAMF ¶ 13; Andrews Aff. ¶ 13.) This interest rate was four-percent for all the loans that he received. (SAMF ¶ 14; Andrews Aff. ¶ 14.) The reduced interest rate meant that the amount of interest was somewhere around $2,365.00 for the year 2000. (SAMF ¶ 15; Andrews Aff. ¶ 15.) This four-percent interest rate continued until Andrews consolidated his loans. (SAMF ¶ 16; Andrews Aff. ¶ 16.)

There is no dispute that Andrews consolidated his student loans through the United States Department of Education. According to Andrews, the Department of Education told him that consolidation was the only way to make his loans current. (SAMF ¶ 18; Andrews Aff. ¶ 18.) Although he admitted in his answer to the complaint that Government Exhibit A was the promissory note he signed, (Resp. SAMF ¶¶ 19, 20; Answer ¶ 3), Andrews now insists that the Government's Exhibit A is not the promissory note that he signed (SAMF ¶ 19; Andrews Aff. ¶

---

[1] As the United States points out, it is not material whether the original loan was borrowed directly from the United States or the Department of Education.

19; Resp. SMF ¶ 1) (emphasis added), but is a combination of the consolidation application and the promissory note that he (admittedly) signed (SAMF ¶ 20; Andrews Aff. ¶ 20).

There is no dispute that the three-page promissory note that Andrews signed is attached by Andrews as Exhibit C to his affidavit. (SAMF ¶ 22; Resp. SAMF ¶ 22; Andrews Aff. Ex. C.) Nor is there a dispute that he signed the Federal Direct Consolidation Loan Application and Promissory Note. (SAMF ¶ 24; Resp. SAMF ¶ 24; Andrews Aff. ¶ 24.) It is Andrews's contention that the promissory note that he signed said nothing about what it meant for default and nothing about capitalizing interest. (SAMF ¶ 21; Andrews Aff. ¶ 21.) The United States counters that the loan application and promissory note "expressly includes a 'Promise to Pay' together with the following statement above the Defendant's signature: 'I UNDERSTAND THAT THIS IS A FEDERAL LOAN THAT I MUST REPAY' (Docket #1-1 at page 3 of 3). The same admonition is found in the Defendant's consolidation paperwork (Defendant's Exhibit C; Docket # 13 at 3 of 3)." (Resp. SAMF ¶ 21; Gov't Ex. 1 at 3; Andrews Aff. Ex. C at 3.)

Based on Andrews's independent interest calculations premised on the terms of his loans from Maine Education Loan Authority the amount should have reflected a total balance of $69,160.88 in 2004. (SAMF ¶ 23; Andrews Aff. ¶ 23.) The United States responds by asserting that Andrews's "interest calculations are unsubstantiated, contrary to the evidence, and immaterial." (Resp. SAMF ¶ 23.) It states, relying on an affidavit filed with its reply,

> the actual amount of indebtedness is further confirmed in the Francisco Declaration. Specifically, a total of $2832.52 was collected and applied to this account, of which $232.39 was applied to principal and $2600.13 was applied to interest (Francisco Declaration paragraph 14). Based on the official records of this debt, as of October 7, 2010, the total outstanding balance is $133,749.48, which includes $121,041.33 in principal and $12,708.15 in interest. Simple interest continues to accrue on the principal balance at a rate of 4.38% per anum (Francisco Declaration paragraph 16).

(Id.)

Andrews maintains that he was told (by an unidentified individual) at the time of his consolidation that there was no page four[2] and that he would be receiving a letter that confirmed his acceptance for a 4.375 percent fixed rate for the remainder of his loan and that he would pay in accordance with the terms of the income contingent plan. (SAMF ¶ 25; Andrews Aff. ¶ 25.)[3] The terms of this plan were that his monthly repayment amount was based on the total amount of his loans, his family size, and his adjusted gross income (SAMF ¶ 26; Andrews Aff. ¶ 26), as his income changed his monthly repayment amount would change (SAMF ¶ 27; Andrews Aff. ¶ 27), and after twenty-five years the unpaid portion of the loan would be forgiven (SAMF ¶ 28; Andrews Aff. ¶ 28). On March 17, 2004, Andrews received a letter confirming that his interest rate was 4.375 percent and that he was on the income contingent repayment plan. (SAMF ¶ 29; Andrews Aff. ¶ 29; id. Ex. E.) This March 17, 2004, letter indicated that he owed a total of 103,924.22. (SAMF ¶ 30; Resp. SAMF ¶ 30.) While Andrews emphasizes that this letter said nothing about capitalizing unpaid interest or what constituted a default (SAMF ¶ 31; Andrews Aff. ¶ 31), the United States responds that the letter read in part: "This is not a grant, award or scholarship. It is a loan and must be repaid. Failure to make payments on time can result in reporting you to National Credit Bureaus, garnishing your wages, withholding federal income tax refunds, taking legal action against you, and other consequences." (Andrews Aff. Ex. E at 1; Resp. SAMF ¶ 31.) Anderson reports that he received another letter in early June 2004 that he did not believe reflected what should have happened with the consolidation. (SAMF ¶ 32; Andrews Aff. ¶ 32; id. Ex. F.)

---

[2] Andrews does not bother to articulate what the implication of "page 4" is in terms of the legal issues pertinent to this rather simple legal dispute.

[3] The United States responds that it is immaterial what Andrews maintains about oral representations even if they were binding on the United States.

Andrews relates that he tried to rectify the Department of Education's mistake that he had a family size of seven (SAMF ¶ 33; Andrews Aff. ¶ 33) and that he tried to correct the amount the department said that he owed (SAMF ¶ 34; Andrews Aff. ¶ 34). His payments did not change and he never received another indication that the Department of Education still believed he had a family size of seven and the principal amount that they said he owed continued to be $103,924. (SAMF ¶ 35; Andrews Aff. ¶ 35.) The United States responds to this area of factual representation by pointing out it was fair to read Andrews's handwritten response as a "7" as opposed to a "2" and that a larger family size would have qualified Andrews for more federal relief, not less. (Resp. SAMF ¶ 33.) It also argues that it is immaterial to the legal issue in this suit whether or not Andrews attempted to correct the family size error. (Resp. SAMF ¶ 34.)

There is no real dispute that Andrews made regular payments until 2006. (SAMF ¶ 36; Resp. SMF ¶ 36.) In February 2006 Andrews asked for and received a forbearance that lasted until October 2006. (SAMF ¶ 37; Resp. SMF ¶ 37.) In November of 2006 he asked for and received a forbearance that lasted until September 2007. (SAMF ¶ 38; Resp. SMF ¶ 38.) It is Andrews's contention that in October 2007 he asked for a third forbearance, a request that he believed had been granted although he does not have a letter confirming that one was granted, (SAMF ¶ 39; Andrews Aff. ¶ 39), and that he was never told that a forbearance was not granted (SAMF ¶ 40; Andrews Aff. ¶ 40). Andrews states that he did receive a communication dated June 15, 2008, from the Department of Education representing this was his last chance to avoid default but that he got these same letters routinely during the period of forbearance, citing letters in November 2004 and December 2007. (SAMF ¶ 41; Andrews Aff. ¶ 41; id. Ex. I.) Sometime in late 2008 Andrews began receiving telephone calls from a person claiming to represent the Department of Education. (SAMF ¶ 42; Andrews Aff. ¶ 42.) The representative told him that he

was in default and that he owed $150,000 that he had to pay promptly. (SAMF ¶ 43; Andrews Aff. ¶ 43.) Andrews purportedly told this individual that he had requested a forbearance and that he did not have $150,000. (SAMF ¶ 44; Resp. SAMF ¶ 44.) The representative repeated his demand and told Andrews that there was nothing that could be done to get out of default. (SAMF ¶ 45; Andrews Aff. ¶ 45.) Andrews received several letters in early 2010 from Diversified Collection Services Inc. claiming to represent the Department of Education demanding he pay $160,000.00. (SAMF ¶ 46; Andrews Aff. ¶ 46.)

The United States emphasizes that after September 14, 2007, no further forbearances were granted Andrews (Resp. SAMF ¶ 39; Francisco Decl. ¶ 15) and that it is immaterial to his liability under the loan documents whether or not Andrews remembers being told about a forbearance and whether or not he received debt-related communications routinely. (Resp. SAMF ¶¶ 39, 40, 41, 42, 43, 44, 45,46.)

**Recommended Resolution**

Meeting its initial burden, the United States has produced the promissory note executed on February 4, 2004, and the certificate of indebtedness.[4] In response to the United States' motion for summary judgment, Andrews maintains in part: "The Government has both failed to establish a prima facie case with respect to the elements of proving a promissory note and there is a genuine issue of material fact that must be resolved by the jury. The major factual dispute in this case is best characterized as one of amount owed and the status of default." (Resp. Mot. Summ. J. at 2.) He believes that the United States has not made out a "prima facie case because it fails to meet the signature element and the default element." (Id.) He insists that the United States has impermissibly combined documents and now claims that they have a valid promissory note. (Id.)

---

[4] (Doc. Nos. 1-1 & 1-2.)

The United States' initial presentation of its prima facie case may not have been picture perfect but I conclude, based on a review of the whole summary judgment record, that it has met its burden of proving the loan obligation and Andrews's default. Andrews has attempted to demonstrate a dispute of facts such as the alleged impermissible combination of documents in the United States' Exhibit A unquestionably executed by Andrews on the same day, per his Affidavit Exhibits C and D, regarding the consolidation he sought; the confusion about whether or not Andrews meant to represent on the repayment plan selection form that he had seven rather than two family members and whether he took steps to inform the United States of the error; and the asserted third request for forbearance vis-à-vis which he admittedly has no documentation. These, and a few other, kernels of alleged irregularity fall far short of creating a genuine dispute vis-à-vis "the nonexistence, extinguishment or variance in payment of the obligation," Petroff-Kline, 557 F.3d at 290, in view of the undisputed material facts such as: Andrews signed the relevant loan documents, has not paid anything on this obligation since September 2007 when the last documented forbearance elapsed, and was duly informed along the way to the May 27, 2010, filing of this complaint that he was in default. Although possible, it is unnecessary on this record to come right out and state that Andrews's opposition relies on the improbable, the conclusory, or the rank, see Ingram, 414 F.3d at 228-29; Andrews has simply not adequately rebutted the United States' prima facie case that he is in default on his 2004 consolidation loan obligations. Although there are some incongruities in the United States' initial motion, Andrews's response to the motion for summary judgment does not generate a dispute of fact material to the question of loan default justifying sending this case to trial.

## CONCLUSION

Andrews has not generated a genuine dispute of material fact justifying sending the question of whether or not he defaulted on his 2004 consolidated loan to a factfinder.[5] Accordingly, I recommend that the court grant the United States' motion for summary judgment and find that Andrews is in default on the note and take whatever further action is necessary in order to determine the actual amount owing as of the date of entry of judgment.

## NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum, within fourteen (14) days of being served with a copy thereof. A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

/s/ Margaret J. Kravchuk
U.S. Magistrate Judge

October 25, 2010.

---

[5] The question of the sum total of Andrews's obligation as a consequence of the principal amounts of his consolidated loans, the capitalization of interest, and the costs of collection will have to await another day. The United States, on this record, has failed to explain in a coherent fashion how the principal amount of $103,924.22, with an interest rate of 4.375% on March 17, 2004, has grown to a principal amount of $121,041.33 in 2010 under the terms of the promissory note. I conclude that somewhere along the way the periods of forbearance triggered a further capitalization of interest in addition to an amount originally "capitalized" in 2004 in order to pay off the amounts owing on the prior student loans, but the United States never comes right out and says that, although Andrews himself introduces exhibits that indicate such to be the case (Andrews Aff. Ex. H, Doc. No. 13-10).