UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 2:10-CV-202 |
| | ) |
| ROBERT C. ANDREWS, | ) |
| | ) |
| Defendant. | ) |

**DEFENDANT ROBERT ANDREWS'S OBJECTION
TO THE RECOMMENDED DECISION**

**NOW COMES** the Defendant, and hereby provides this objection to the Recommended Decision with incorporated memorandum of law and requests and order denying the adoption of the recommended decision:

**INTRODUCTION**

The Government asserts that it has met its prima facie burden for a judgment on its motion for summary judgment. The standards that apply to all summary judgment motions are well known:

> That device functions successfully when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). Faced with a properly documented summary judgment motion, the nonmovant can thwart the motion only by showing through materials of evidentiary quality that a genuine dispute exists about some material fact. This evidence "must have substance in the sense that it limns differing versions of the truth which a factfinder must resolve at an ensuing trial. In assessing such a proffer, an inquiring court must resolve all evidentiary conflicts and draw all reasonable inferences in the nonmovant's favor. If the proffer, viewed through this prism, "is merely colorable, or is not significantly probative, summary judgment may be granted.

*Acosta v. Ames Dep't Stores, Inc*., 386 F.3d 5, 8 (1st Cir.2004). The Government is incorrect and

they are not entitled to summary judgment in accordance with the standards that are defined by Federal Rule of Civil Procedure 56. The Government's motion fails for two reason. The Government has both failed to establish a prima facie case with respect to the elements of proving a promissory note and there is a genuine issue of material fact that must be resolved by the jury. The Court should not adopt the recommended decision because it fails to establish how $59,119.00 became 103,879.16 by February 4, 2004.

The Government has misidentified the elements of a prima facie case necessary to meet the burden for summary judgment involving a promissory note for student loan debt. The three elements of a prima facie case are signature, holder status, and proof of default:

> To recover on a promissory note, the government must show (1) the defendant signed it, (2) the government is the present owner or holder, and (3) the note is in default. FDIC v. Selaiden Builders, Inc., 973 F.2d 1249, 1254 (5th Cir.1993). Because the government produced sufficient evidence to satisfy its summary judgment burden, the burden shifted to Lawrence to "set forth specific facts showing that there is a genuine issue for trial," not just to "rest upon the mere allegations or denials of the adverse party's pleading."

*United States v. Lawrence*, 276 F.3d 193, 197 (5th Cir5 2001). The Government cannot meet its burden for a prima facie case because it fails to meet the signature element and the default element. The problem for the Government is that they cannot combine documents and claim they are a valid promissory note. Moreover, the dispute in this case is how much interest has accumulated and how much is the amount of the principle. The documents submitted by the Government also do not meet either the prima facie standard for proving default. The Government's motion for summary judgment should be denied.

**FACTS**

The Government has alleged that I am responsible for the re-payment of my student loans. Government's Statement of Material Fact *hereinafter* GSMF ¶ 1. Specifically, on or about February 4, 2004, Robert C. Andrews executed a promissory note to secure a Direct Consolidation loan under the William D. Ford Federal Direct Loan program under Title IV-D of the Higher Education Act of 1965, as amended, 20 U.S.C. Section 1087a, et seq. GSMF ¶ 1. The Government says the loan was disbursed for $58,592.43 on March 8, 2004 at 4.38% interest per annum. On or about July 10, 2008, the defendant defaulted upon the terms of the promissory note. As of April 19, 2010, the defendant is indebted to the Department of Education in the principal amount of $121,041.33, and interest in the amount of $10,224.38, for a total amount due of $131,265.71. Interest is accruing from April 19, 2010 at the rate of 4.38% per annum until the date of judgment. The Department of Education has credited a total of $2,832.52 in payments form all sources. GSMF ¶ 2. The Government also says that demand has been made upon the defendant by the plaintiff for the sum due, but the amount due remains unpaid. GSMF ¶ 3. I am not asserting that I was in the military service of the United States or that I am an infant or a mentally incompetent person. GSMF ¶ 4.

I am the Robert C. Andrews who funded his legal education with student loans from the Maine Education Loan Authority. Defendant's Statement of Additional Facts *hereinafter* DSAF ¶ 1. I received student loans from three sources: Stafford Loans, Unsubsidized Stafford loans, and Perkins loans. DSAF ¶ 2. The exhibits that I attached to my Affidavit are true and accurate copies of my own personal records that I have kept. DSAF ¶ 3.

In 1995, I was accepted and attended the University of Maine School of Law as a full time law student. DSAF ¶ 4. I attended the University of Maine School of Law for the academic

years 1995-1996, 1996-1997, and 1997-1998.  DSAF  ¶ 5.  I paid for attending the University of Maine School of Law with student loans. DSAF  ¶ 6.  I did not fund any of my other education with loans obtained from, administered by, or guaranteed by the United States Government. DSAF ¶ 7.  I had and have no other student loan debt other than what I borrowed to pay the University of Maine School of Law.  DSAF ¶ 8. My education prior to law school had been completely funded by my parents, Douglass and Elizabeth Andrews, or other family members. DSAF ¶ 9.

    I borrowed a total of $59,119.00 as of my graduation in May 1998.  DSAF ¶ 10.  I did not borrow any of this money directly from the United States or the Department of Education. DSAF ¶ 11.  I did not borrow any student loan money at the interest rates indicated by the higher education act of 1965.  DSAF ¶ 12.  I participated in a student loan program administered through the Maine Education Loan Authority at an interest rate that was one percent lower than the interest rate that was indicated for unsubsidized student loans for the life of the loan.  DSAF ¶ 13.  The loan program from Maine Education Loan Authority meant that the interest rate was 4 percent for all the loans that I received.  DSAF ¶ 14.  The reduced interest rate meant that the amount of interest was somewhere around $2,365.00 for the year 2000.  DSAF ¶ 15.  This 4 percent interest rate continued until such time as I consolidated my loans because the interest was subsidized by the Maine Education Loan Authority.  DSAF ¶ 16.

    I consolidated my loans in 2004 with the United States and the Department of Education. DSAF ¶ 17.  The Department of Education told me that consolidation was the only way to make my loans current. DSAF  ¶ 18.  The Government's Exhibit A is not the promissory note that I signed.  DSAF ¶ 19.  The Government's Exhibit A is a combination of the consolidation

4

application and the promissory note that I signed. DSAF ¶ 20.

The promissory note that I signed said nothing about what it meant for default and nothing about capitalizing interest. DSAF ¶ 21. The three page promissory note that I signed is attached to my affidavit as Exhibit C. DSAF ¶ 22. Based on my interest calculations in accordance with the terms of my loans from Maine Education Loan Authority the amount should have had a total balance of $69,160.88 in 2004. DSAF ¶ 23. I signed the Federal Direct Consolidation Loan Application and Promissory Note. DSAF ¶ 24. I was told that there was no page four and that I would be receiving a letter that confirmed my acceptance for a 4.375 percent fixed rate for the remainder of my loan and that I would pay in accordance with the terms of the Income Contingent Plan. DSAF ¶ 25.

The Terms of the income contingent plan were that my monthly repayment amount was based on the total amount of my loans, my family size, and my Adjusted Gross Income. DSAF ¶ 26. The Terms of the income contingent plan were that as my income changed, my monthly repayment amount may change. DSAF ¶ 27. The Terms of the income contingent plan provided that after 25 years the unpaid portion of the loan would be forgiven. DSAF ¶ 28.

On March 17, 2004, I received a letter confirming that my interest rate was 4.375 percent and that I was on the income contingent repayment plan. DSAF ¶ 29. The March 17, 2004 letter indicated that I owed a total of 103,924.22. DSAF ¶ 30. The March 17, 2004 letter said nothing about capitalizing unpaid interest or what constituted a default. DSAF ¶ 31. I received another letter dated June 6, 2004 that I did not believe reflected what should have happened with the consolidation. Exhibit F is attached and included by reference. DSAF ¶ 32. I tried to correct the Department of Education's mistake that I had a family size of seven. DSAF ¶ 33. I tried to

correct the amount they said that I owed. DSAF ¶ 34. My payments did not change, I never received another indication that the Department of Education still believed I had a family size of seven, and the principle amount that they said I owed continued to be $103,924.00. DSAF ¶ 35.

I made regular payments until 2006. DSAF ¶ 36. In February 2006, I asked for and received a forbearance that lasted until October 2006. DSAF ¶ 37. In November of 2006, I asked for and received a forbearance that lasted until September 2007. DSAF ¶ 38. In October 2007 I asked for a third forbearance, that I believed had been granted although I do not have a letter confirming that one was granted. DSAF ¶ 39. I was never told that a forbearance was not granted either. DSAF ¶ 40. I did receive a communication from the Department of Education after October saying this was my last chance to avoid default dated June 15, 2008 but I got these same letters routinely during the period of forbearance including December 31, 2007 and November 24, 2004. DSAF ¶ 41.

Sometime in late 2008, I began receiving telephone calls from a person claiming to represent the Department of Education. DSAF ¶ 42. The representative told me that I was in default and that I owed $150,000.00 that I had to pay now. DSAF ¶ 43. I told him that I had requested a forbearance and that I did not have $150,000.00. DSAF ¶ 44. The representative repeated his demand and told me that there was nothing that could be done to get out of default. DSAF ¶ 45. I received several letters in early 2010 from Diversified Collection Services Inc. claiming to represent the Department of Education demanding I pay $160,000.00. DSAF ¶ 46.

## ARGUMENT

I. **THE GOVERNMENT HAS FAILED TO ESTABLISH A**

## PRIMA FACIE CASE ON THE PROMISSORY NOTE.

The Government does not meet the prima facie standard because the Complaints Exhibit A submitted by the Government is insufficient on its face. First, the title of Exhibit A is Repayment Plan Selection. Second Exhibit A is insufficient because it does not identify any specific loan number, account number, or balance. Finally, the final page of Exhibit A has the number 3 at the bottom and identifies sections E and F and does not contain page 1 and 2 or sections A, B, C, or D. These pages of Exhibit A are actual forms used by the Department that were signed on February 4, 2004 by me but they are not a valid promissory note.

The Government's reliance on the admission to paragraph 3 of the complaint is misplaced. The paragraph alleges that on or about February 4, 2004, the defendant executed "a" promissory note. A promissory note was executed on that date by me, the Government has simply not produced that document as required by its burden to meet the prima facie requirement. The Government needs to produce the complete promissory note in order to meet its burden.

The problem goes beyond proving the actual documents in this case. The Government asserts that I owe a principle amount of 121,041.33. If the Government's numbers are correct that means in the last ten years I have accumulated 62,448.90 in interest. The Government asserts in its motion that the actual amount borrowed was 58,592.43. Sixty two thousand over ten years exceeds the 8.25 percent maximum interest rate under the Higher Education Act. See 20 U.S.C.A. § 1077a(f)(1)(B). The numbers asserted by the Government simply do not add up to the amounts alleged. The Government cannot now rely on the documents produced by the Defense to satisfy it burden.

## II. THERE REMAINS A DISPUTED GENUINE ISSUE OF MATERIAL FACT ON THE PROMISSORY NOTE.

The Government has to be relying on Exhibit B to cure the defects with the promissory note. The problem is that Exhibit B indicates the Department of Education disbursed two loans in the amount of $58,592.43 and $45,244.73 on March 8, 2004. Exhibit B never explains where these amounts came from. The Defense has provided an explanation and alternate figure of $59,119.00 as the total amount of debt as of May 1998. While the Government seems to agree, that the total amount of money borrowed was around $59,000.00 in its motion for summary judgment, the affidavit seems to indicate that the Department of Education believes the principle balance is closer to $104,000.00. The Government's numbers are based solely on the certification of someone who has already misidentified critical documents, does not indicate on what basis the certification is made, and provides no explanation on where these loans originated.

The document signed February 4, 2004 is not sufficient to prove the debt because it does not demonstrate that the Government is the holder and identify the amount to which the Government is entitled. Only the original loan documents could satisfy proof of holder status:

> "Holder" with respect to a negotiable instrument, means the person in possession if the instrument is payable to bearer or, in the case of an instrument payable to an identified person, if the identified person is in possession. "Holder" with respect to a document of title means the person in possession if the goods are deliverable to bearer or to the order of the person in possession.

U.C.C. 1-201(20) (West 2010). While the government may be able to prove that they are entitled to some amount of money, it is not the money identified in the in February 4, 2004 promissory note. At best the February 4, 2004 document allows the Government to collect the

original promissory notes. *See F.D.I.C. v. Selaiden Builders, Inc.*, 973 F.2d 1249 1255 (5th Cir. 1992). Not a single one of the documents submitted by the Government contains or explains how the balance was calculated to $103,879.16 as asserted by the Government's latest explanation of how interest was calculated in Mr. Frisco's Declaration. This second Declaration is no better than the first in terms of calculating the amount due.

The Defense has provided testimony and information sufficient to demonstrate that there is a genuine issue of material fact. In particular, the Defense has provided the statements for disbursements from the University of Southern Maine which managed the tuition and student loans for law students at the University of Maine School of Law. The Defense has provided the statements from the lender of what money was paid to the University of Maine School of Law. The Defense has offered sworn statements in an affidavit that he only borrowed money to pay for Law School and that he only borrowed so called Stafford Loans from the Maine Education Loan Authority. The evidence submitted by the Defense undeniable demonstrates that the total amount borrowed was $59,119.00. The jury must decide which amount is actually correct.

### III. THE GOVERNMENT HAS FAILED TO ESTABLISH A PRIMA FACIE CASE ON DEFAULT

The Government relies on the certification of the Loan Analyst for its sole basis of proof that a default occurred. Assuming arguendo, the Government does not need to provide a definition of default included as part of a valid promissory note, any definition for default would have to confirm to the definition required by the Code of Federal Regulations:

Under the federal regulations default is defined as:

> The failure of a borrower to make an installment payment when due, or to meet other terms of the promissory note under circumstances where the Secretary or guarantee agency finds it

> reasonable to conclude the borrower no longer intends to honor the obligation to repay, providing that this failure persists for-
>
>> (1) 180 days for a loan repayable in monthly installments[.]
>
> 34 C.F.R. § 682.200(b). Thus, a loan is in default if it is delinquent for over 180 days.

*Stone v. United Student Aid Funds, Inc.* 818 F.Supp. 254, 258 (S.D.Ind.,1993). The Certificate only makes the conclusory statement that the loan was in default and that demand had been made. The certification is totally devoid of any information from which it would be possible to determine that the loan was in default either because the Secretary reasonably concluded it would not be honored or that payments were not made when due. Bald assertions due not meet the prima facie standard.

The Certification has to meet basic evidentiary standards in order to satisfy the burden required at summary judgment. The Certificate must state the basis of the knowledge necessary to make the certification:

> Gorham testified that as a loan analyst, she is familiar with how the DOE maintains records related to student loans, that she was in custody and control of Lawrence's student loan records, that these records are kept in the course of DOE's regularly conducted student loan business, that the promissory notes are "true copies of the documents transmitted to DOE by the Lake Air National Bank," and that DOE took assignment of the loans. Gorham's affidavit satisfies the requirements of both rule 56(e) and the "business records exception" to the hearsay rule, FED.R.EVID. 803(6). Lawrence does not contest the competency of the affidavit, so the district court did not err in relying on it in granting summary judgment.

*United States v. Lawrence*, 276 F.3d 193, 196-197 (5th Cir5 2001). *Lawrence* demonstrates what is required from the certification to meet the prima facie standard. As pointed out earlier, the Loan Analyst's basis for certifying the information is completely absent from Exhibit B.

Moreover, the combination of documents in Exhibit A suggests that the Loan Analyst may not have any basis at all from which to make the certification. Unlike *Lawrence*, this is a direct challenge to the competency of the affidavit made by the Loan Analyst.

### IV. THERE REMAINS A DISPUTED GENUINE ISSUE OF MATERIAL FACT ON THE DEFAULT.

The Recommended Decision relies on the Loan Analyst's assertion that the promissory note was in Default on July 10, 2008. The problem is that the Department of Education sent a warning about default on June 15, 2008 that specifically provided and additional 30 days from the postmark of the letter before default status could be entered. The 30 day term provided in the letter had not expired on July 10, 2008 and the account could not have been in default on July 10, 2008 without that expiration. The Government has failed to account for this in any way in either its motion or its exhibits.

The Government has also not accounted for the request for forbearance that was made in October of 2007 and granted. A forbearance would have the affect of keeping the account current for purposes of default. A forbearance status also would have delayed an 180 day period required by the default standard. The existence of a forbearance would also explain why the Department would have issued a default warning dated June 15, 2008. The Government has not shown that a forbearance did not issue and that default was appropriate on July 10, 2008.

In fact, the Government made a document available that suggest there was a forbearance after the alleged date of default. The Government explains that this was not a real letter meant to have any effect. The Affidavit they submitted making the explanation says the Executive Issues Department made the letter by mistake with someone else's information. The Declaration never says who this person was that made this mistaken letter nor does the declaration says that Tracy

11

Bird-rmillard was actually present when this letter was made by mistake. The Declaration only says that someone who says they know what happened says it's a mistake. While it may be true that there is some default status because the loans have never been paid, that does not mean that a failure to pay meets the legal definition of default required by the Code of Federal Regulations. To the extent that the Recommended Decision finds the circumstances to meet the legal definition of default, it is incorrect.

## CONCLUSION

The recommended decision should be reversed and a trial should be held to resolve the genuine issues of material fact.


Dated December 3, 2010 /s/ Robert C. Andrews
Robert C. Andrews
Maine Bar No. 8980
P.O. Box 17621
Portland, Maine 04112
207-879-9850

**CERTIFICATE OF SERVICE**

I hereby certify that on December 3, 2010, I caused a copy of the foregoing to be filed with the Clerk of Court using the CM/ECF system which will send notification of such filing(s) to the following:

EVAN J. ROTH

evan.roth@usdoj.gov,maria.bida@usdoj.gov,alvah.chalifour@usdoj.gov,kim.meikle@usdoj.gov, USAME.ECF@usdoj.gov

                                             /s/ Robert C. Andrews
                                             Robert C. Andrews
                                             Maine Bar No. 8980
                                             P.O. Box 17621
                                             Portland, Maine 04112
                                             207-879-9850